UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

LIBRARY RIGHTS COMPANY (UK) LTD.,
a United Kingdom limited company,

      Plaintiff,

 vs.

MIRAMAX, LLC, a Delaware limited liability
company; MIRAMAX FILM CORP., a
Delaware corporation; MIRAMAX FILM NY,
LLC, a New York limited liability company;
ERPFC RELEASING, INC., a California
corporation; EDWARD R. PRESSMAN FILM
CORPORATION, a Delaware corporation;
DOES 1-20,

      Defendants.

------------------------------------

Case No. 1:20-cv-09396-AT

Jury Trial Demanded

**FIRST AMENDED COMPLAINT**

Simon J.K. Miller (NY SBN 2607588)
smiller@eisnerlaw.com
152 West 57th Street, 48th Floor
New York, New York 10019
Ph. (646) 876-2600

Jeremiah Reynolds (CA SBN 223554)
jreynolds@eisnerlaw.com
*pro hac vice forthcoming*
Katherine Pierucci (CA SBN 301051)
kpierucci@eisnerlaw.com
*pro hac vice forthcoming*
9601 Wilshire Blvd., 7th Floor
Beverly Hills, CA 90210
Ph. (310) 855-3200

*Attorneys for Plaintiff*
*Library Rights Company (UK) Ltd.*

Plaintiff Library Rights Company (UK) LTD ("LRC" or "Plaintiff"), for its first amended complaint against Defendants Miramax, LLC, Miramax Film NY, LLC ("Miramax NY"), Miramax Film Corp. ("Miramax FC" and together with Miramax, LLC and Miramax NY, "Miramax"), ERPFC Releasing, Inc. ("ERI"), Edward R. Pressman Film Corporation ("ERPFC" and together with ERI, the "Pressman Defendants") and DOES 1 through 20, inclusive (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff is the exclusive holder of the worldwide distribution rights in the motion picture titled "The Crow: Salvation a/k/a The Crow III" (the "Picture"). Plaintiff acquired those rights pursuant to a foreclosure sale conducted on June 17, 2009 and the acquisition of those rights was recorded with the U.S. Copyright Office on June 18, 2009.

2. For the past ten years, Defendant Miramax has knowingly and blatantly infringed upon Plaintiff's rights in the Picture by exploiting the Picture on several platforms even though Miramax's contractual right to exploit the Picture on these platforms has long since expired. Miramax took numerous steps to cover up its tracks, including by (i) executing invalid contractual extensions to the license period despite knowing that the grantor, the Pressman Defendants, had no rights in the Picture, (ii) misrepresenting the length of the license period, and (iii) refusing to send Plaintiff accounting statements showing license fees earned on the Picture from exploitation. The Pressman Defendants were complicit in this cover-up by purporting to grant an extension of Miramax's license period even though the Pressman Defendants were not the owner of rights to the Picture. Plaintiff therefore only recently discovered Miramax's infringement.

3. In September 1998, Miramax FC entered into a Distribution Agreement with ERI, pursuant to which ERI granted Miramax theatrical, non-theatrical, home video, and video-on-

demand distribution rights in the Picture in North America for a period of ten years and in television for a period of 21 years. Approximately two months after executing the Distribution Agreement, ERI, along with other entities owning rights in the Picture, including Defendant ERPFC, assigned all of their rights in the Picture, including the rights under the Distribution Agreement, to Millennium Media Networks ("Millennium"). Miramax FC expressly acknowledged this assignment and it was recorded with the U.S. Copyright Office on May 27, 1999. Thus, as of November 1998, the Pressman Defendants had no rights in the Picture, including any right to distribute the Picture, receive license fees from the Picture, or grant extensions to the Distribution Agreement to Miramax.

4. Despite both Miramax and ERI having previously acknowledged that ERI had no rights in the Picture, beginning on April 1, 2011, ERI entered into various invalid amendments purporting to extend Miramax's rights under the Distribution Agreement until 2023. Since the invalid extension through the filing of this lawsuit, Miramax has exploited the Picture and thereby repeatedly and continuously infringed on Plaintiff's exclusive rights. Plaintiff is further informed and believes that Miramax has improperly paid license fees to the Pressman Defendants throughout this invalid extension period, and the Pressman Defendants have knowingly and wrongfully accepted these fees despite knowing they had no rights in the Picture.

5. When Plaintiff realized Miramax's breach and infringement despite its cover-up, and the Pressman Defendants' contributory infringement and intentional interference with Plaintiff's contractual rights to the license fees, Plaintiff immediately contacted Miramax to demand an explanation and requested an accounting of all revenues earned since Miramax's rights under the Distribution Agreement expired in February 2010. Miramax supplied Plaintiff with the invalid amendments, but Miramax provided no explanation for why it would enter into an extension of the Distribution Agreement with the Pressman Defendants when Miramax knew

that the Pressman Defendants had no rights in the Picture, implicitly conceding that the invalid extensions were intentionally designed to create the impression that Miramax had rights it did not have. Still relying on the invalid amendments through the filing of this lawsuit, Miramax has continued to exploit the Picture in media where it has no rights, it has refused to notify its sub-distributors of Plaintiff's claim for infringement, and it has not complied with Plaintiff's repeated demands for an accounting that could have potentially led to an informal resolution of this dispute. Plaintiff now brings this lawsuit to remedy this egregious infringement and cover-up by Miramax and the Pressman Defendants.

## THE PARTIES

6. Plaintiff LRC is, and at all relevant times mentioned herein was, a United Kingdom limited company.

7. Defendant Miramax, LLC is, and at all relevant times mentioned herein was, a Delaware limited liability company, and, upon information and belief, doing business in the State of New York.

8. Defendant Miramax FC is, and at all relevant times mentioned herein was, a Corporation organized and existing under the laws of the State of Delaware, and, upon information and belief, doing business in the State of New York.

9. Defendant Miramax NY is, and at all relevant times mentioned herein was, a New York limited liability company, with its principal place of business in the State of New York.

10. Defendant ERI is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of California, and, upon information and belief, doing business in the State of New York.

11. Defendant ERPFC is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of Delaware, and, upon information and

belief, doing business in the State of New York.

12. Plaintiff is informed and believes, and on that basis alleges, that Defendants DOES 1 through 20, inclusive, are individually and/or jointly liable to Plaintiff for the conduct alleged herein. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff at this time. Accordingly, Plaintiff sues Defendants DOES 1 through 20, inclusive, by fictitious names and will amend this Complaint to allege their true names and capacities once ascertained.

13. Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times mentioned herein, Defendants, and each of them, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents or employees of the others in doing the acts complained of herein, each and all acting within the course and scope of the agency of and/or employment by the others, each and all acting in concert one with the other and all together.

14. Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times mentioned herein, Defendants, and each of them, were, and are, the agents, servants, alter egos and/or employees of each of the other Defendants, and all the things alleged to have been done by Defendants were done in the capacity of and as agent, servant, alter ego and/or employee of and for the other Defendants, with their knowledge, approval, and ratification.

## JURISDICTION AND VENUE

15. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

16. Federal courts have exclusive jurisdiction over copyright claims under 28 U.S.C. § 1338(a).

17. This court has personal jurisdiction over Defendants because each Defendant is located within the district or conducts extensive business within the district, and the contract at issue, the Distribution Agreement, was entered into and breached in the County of New York.

18. In copyright infringement actions, venue is proper where the defendants are found or where infringing acts occur under 28 U.S.C. §1400(a). Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the allegations in this complaint occurred in this district and both parties have offices and conduct business within this district.

## STATEMENT OF FACTS

19. This dispute concerns Defendants' wrongful exploitation of distribution rights to the Picture in North America. Released in 2000, the Picture is the second sequel to the original motion picture titled, the Crow, released in 1994. The Picture is registered with the U.S. Copyright Office in the name of copyright claimant IMF Internationale Medien and Film BmgH & Co Production KG ("IMF") under Form Pau2-459-798 PA as of February 4, 2000. Plaintiff's subsequent acquisition of exclusive distribution rights in the Picture via a foreclosure sale was recorded with the U.S. Copyright Office on June 18, 2009.

20. On September 22, 1998, Miramax FC, on the one hand, and ERI, as agent for Crowvision, Inc. (collectively "ERI"), on the other hand, executed a Distribution Agreement, pursuant to which ERI granted Miramax FC certain distribution rights in the Picture in the United States and Canada for a term of years. The Distribution Agreement set forth in detail Miramax FC's obligations to ERI, including the payment of a minimum guarantee of $4,000,000. The Distribution Agreement further obligated Miramax FC to maintain accurate books of account and records with respect to its exploitation of the Picture: "Miramax shall render itemized statements in reasonable detail accompanied by payment of the amounts stated to be due therein within 30 days following the end of each accounting period." Moreover, the

Distribution Agreement provides that "[s]aid books of account and records may be examined and/or audited and copied by [ERI] and its representatives once in each 12-month period." The Distribution Agreement further provided that Miramax FC and ERI would share "Gross Receipts" derived from the Picture with 75% going to ERI and 25% going to Miramax FC after Miramax FC first recouped the Minimum Guarantee and its Distribution Expenses (as defined in the Distribution Agreement).

21. The Distribution Agreement was amended twice by Letters of Agreement by and among Miramax FC and four other entities, Film Finances, Inc., Union Bank of California, N.A., IMF, and Pacifica Film Distribution, LLC ("Pacifica") dated November 1, 1999 ("Amendment No. 1") and December 15, 1999 ("Amendment No. 2"), respectively.

22. Under the Distribution Agreement as amended by Amendment Nos. 1 and 2, Miramax FC's license to exploit the Picture in theatrical, non-theatrical, home video, and video-on-demand platforms expired on February 16, 2010.

23. Within two months of executing the Distribution Agreement, ERI assigned all of its rights in the Picture to an entity called Millennium. The assignment was made pursuant to a written agreement, dated as of November 4, 1998, by and between ERI, Edward R. Pressman Film Corporation ("ERPFC"), and Fallen Bird Production, Inc. ("Fallen Bird" and together with ERI and ERPFC, "Assignors") and Assignors thereby assigned to Millennium all right, title and interest in and to the Picture, including, without limitation, all rights of ERI under the Distribution Agreement ("Assignment No. 1"). Assignment No. 1 was recorded with the U.S. Copyright Office on May 27, 1999 Doc. No. V3436D834, P1-8. Thus, as of November 4, 1998, neither of the Pressman Defendants had any rights in the Picture.

24. Millennium immediately assigned its newly acquired rights in the Picture to IMF, pursuant to an agreement dated November 4, 1998 ("Assignment No. 2").

7

25. In its capacity as successor-in-interest to the rights of Assignors pursuant to Assignments Nos. 1 and 2, IMF executed the Theatrical Pickup Distribution Agreement, pursuant to which IMF granted to Pacifica, a subsidiary of IMF, the right to exploit the Picture "throughout the universe" in "all media now known or hereafter created" and therefore all rights of IMF in and to the Distribution Agreement.

26. Miramax FC expressly acknowledged that Pacifica had acquired the rights of ERI under the Distribution Agreement by executing the Acknowledgment of Assignment of Rights dated as of February 1999, with effect from November 4, 1998. But, wanting to continue exploiting the Picture despite the expiration of its licensing period, Miramax knowingly executed invalid extensions with ERI, which had no rights in the Picture.

27. Plaintiff LRC then acquired all of Pacifica's rights in the Picture and under the Distribution Agreement pursuant to a foreclosure sale conducted on or about June 17, 2009 (the "Foreclosure Sale"). The Foreclosure Sale is described in the Memorandum of Sale and the Assignment and Quitclaim, recorded with the U.S. Copyright Office on June 18, 2009, Vol. 3578, Doc. 267.

28. For years, Miramax intentionally leveraged its invalid extensions with ERI to continue exploiting the Picture to the exclusion of Plaintiff. Miramax was obligated to send accounting statements to Plaintiff to report license fees earned, but intentionally did not do so to hide the fact that Miramax was failing to send license fees to Plaintiff, the rightful owners of the Picture. Because Miramax hid the accounting statements, Plaintiff did not discover until October 2020 that Miramax had been exploiting and collecting certain license fees for the Picture even though Miramax FC's license with respect to the Picture had expired in 2010. Attached as **Exhibit A** hereto are true and correct copies of screen shots illustrating that, as of the date of this lawsuit, Miramax continues to exploit the Picture on various video-on-demand and subscription

video-on-demand platforms.

29. Miramax has continuously and repeatedly collected license fees from exploiting the picture during the invalid extension period. On October 12, 2020, Plaintiff directed Defendant Miramax, LLC, in its capacity as successor to Defendant Miramax FC, to provide Plaintiff with accounting statements as required under the Distribution Agreement and to pay Plaintiff all amounts due to Plaintiff in Plaintiff's capacity as successor to ERI under the Distribution Agreement.

30. Miramax refused to provide Plaintiff with any accounting statements or pay amounts owed under the Distribution Agreement in material breach of the Distribution Agreement. Instead, Plaintiff is informed and believes that Miramax intentionally denied the accounting statements to Plaintiff and instead issued accounting statements to the Pressman Defendants and the Pressman Defendants improperly accepted those statements in order to prevent Plaintiff from discovering Miramax's exploitation of the Picture and receipt of revenues from the Picture.

31. To further cover its tracks, in 2011, Miramax accepted "extensions" to its License Period through December 31, 2023 from ERI, in its purported capacity as successor-in-interest to the rights of Miramax FC under the Distribution Agreement.

32. But as Miramax well knew, over ten years before ERI purported to extend Miramax's license period, ERI had already executed Assignment No. 1, assigning all of its rights to Millennium. Thus, since the execution of Assignment No. 1 in 1998, ERI had no rights under the Distribution Agreement to extend Miramax's license period. Moreover, given that Miramax FC executed the Acknowledgment of Assignment of Rights dated February 1999 expressly acknowledging Assignment No. 1, Miramax knew that ERI's purported extension was invalid. Miramax accepted that extension anyway to intentionally hide the fact that it did not own the

right to exploit the Picture.

33. Pursuant to this flawed and disingenuous position, Miramax has been exploiting the Picture on several video-on-demand platforms and collecting licensing fees continuously throughout the purported extension even though Miramax's right to exploit the Picture had long since expired, amounting to years of repeated copyright infringement. And, instead of paying license fees to Plaintiff as successor-in-interest to the rights of ERI under the Distribution Agreement, Plaintiff is informed and believes that Miramax has been paying license fees to the Pressman Defendants, parties that have absolutely no valid rights under the Distribution Agreement. And even though the Pressman Defendants knew they assigned away their rights in the Picture in November 1998, Plaintiff is informed and believes they knowingly accepted license fees from Miramax.

34. Miramax has refused Plaintiff's valid requests to Miramax for accounting statements under the Distribution Agreement, such that Plaintiff cannot even begin to ascertain the amount of money that Miramax has made from its unlawful exploitation of the Picture, and Plaintiff is further prevented from alleging the precise amount and dates of license fees Miramax wrongfully collected.

## COUNT I
### (Breach of Contract - Against Miramax and Does 1-20)

35. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 34, inclusive, as though set forth in full.

36. Pursuant to Assignment Nos. 1 and 2, the Theatrical Pickup Distribution Agreement, the Foreclosure Sale, Memorandum of Sale and the Assignment and Quitclaim, each defined herein, Plaintiff is the successor-in-interest to the rights of ERI under the Distribution Agreement, by and between ERI and Defendant Miramax FC.

37. Defendants Miramax, LLC and Miramax NY have each taken the position that they are the successor-in-interest to Miramax FC's rights and obligations under the Distribution Agreement.

38. Plaintiff or its predecessors-in-interest have fully performed pursuant to the contract, or Plaintiff's or its predecessors-in-interests' performance has been excused by Miramax's breaches of the contract.

39. In material breach of the Distribution Agreement, Miramax has continuously exploited the Picture on video and video-on-demand platforms even after its license to do so expired on February 16, 2010 through the date of filing this lawsuit. In further breach of the Distribution Agreement, after the expiration of the license period, Miramax continuously and repeatedly collected license fees through the date of filing this lawsuit for its improper exploitation of the Picture, and Plaintiff is informed and believes that Miramax paid monies to ERI, all while knowing ERI had assigned away its rights to those monies, which now belong to Plaintiff, as successor-in-interest to ERI under the Distribution Agreement.

40. Miramax took numerous affirmative steps to prevent Plaintiff from discovering Miramax's breach of the Distribution Agreement, including executing invalid contractual extensions to the license period despite knowing that ERI had no rights in the Picture, misrepresenting the length of the license period, and by refusing to send Plaintiff accounting statements showing license fees earned on the Picture. As a result of Miramax's successful efforts to hide its invalid exploitation, Plaintiff only recently discovered the truth of Miramax's breach.

41. Since discovering Miramax's breach of contract, Plaintiff has demanded a full accounting of the license fees that Miramax has wrongfully earned on the Picture. But Miramax has refused that demand, constituting yet another breach of the Distribution Agreement.

42. Miramax's continuing exploitation of the Picture from February 16, 2010 through the date of filing this lawsuit amounts to a continuing violation of the Distribution Agreement. Moreover, every instance of Miramax renewing its exploitation and/or accepting wrongfully earned license fees from its invalid exploitation of the Picture constitutes a new breach of the Distribution Agreement. On information and belief, Miramax has frequently and continuously accepted license fees and failed to return them to Plaintiff. Plaintiff cannot allege the precise amount and dates of license fees Miramax wrongfully collected because Miramax has refused to provide an accounting, despite Plaintiff's repeated demand.

43. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered monetary damages in an amount to be proven at trial, but at least equal to the license fees that Miramax has continuously earned throughout the invalid extension period in breach of the Distribution Agreement.

## COUNT II
### (Copyright Infringement - Against Miramax and Does 1-20)

44. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 40, inclusive, as though set forth in full.

45. Plaintiff LRC acquired all of Pacifica's rights pursuant to the Foreclosure Sale conducted on or about June 17, 2009. The Foreclosure Sale is described in the Memorandum of Sale and the Assignment and Quitclaim, recorded with the U.S. Copyright Office on June 18, 2009, Vol. 3578 Doc. 267.

46. Plaintiff holds exclusive rights under 17 U.S. Code § 106 to distribute and reproduce the copyrighted work, distribute copies of the copyrighted work, and display the copyrighted work publicly.

47. Pursuant to 17 U.S. Code § 501, since 2010 through the filing of this lawsuit and

beyond, Defendant Miramax has repeatedly infringed on the exclusive rights of Plaintiff by continuously exploiting the Picture and purporting to license the Picture to third parties, including but not limited to on video-on-demand platforms, even though it has no right to do so. Defendant Miramax has been continuously collecting revenues from third parties for the Picture throughout this period and has failed to provide the sums collected to Plaintiff LRC. Plaintiff has been intentionally prevented from alleging the precise dates of exploitation and amount of wrongful license fees collected because Miramax has refused to provide the requested accounting, but Exhibit A illustrates that, as of the date of this filing, Miramax continues to exploit the Picture on various video-on-demand and subscription video-on-demand platforms.

48. Miramax took numerous affirmative steps to prevent Plaintiff from discovering Miramax's copyright infringement, including executing invalid contractual extensions to the license period despite knowing that ERI had no rights in the Picture, misrepresenting the license period, and by refusing to send Plaintiff accounting statements showing license fees earned on the Picture. As a result of Miramax's successful efforts to hide its invalid exploitation, Plaintiff only recently discovered the truth of Miramax's copyright infringement.

49. When Plaintiff LRC demanded that Defendant Miramax provide an accounting of the revenues it has collected as a result of licensing the Picture in infringement of Plaintiff LRC's copyright, Defendant Miramax claimed to own the right to license the Picture based on the purported extension of the Distribution Agreement granting Defendant Miramax licensing rights and failed to provide any statements. However, Defendant Miramax and the Pressman Defendants had previously acknowledged in writing that ERI had assigned its rights under the Distribution Agreement, and therefore it was aware that ERI had no authority to grant Defendant Miramax any extension.

50. Accordingly, Plaintiff LRC is informed and believes, and on that basis alleges,

that Defendant Miramax's acts were and are willful and malicious and intended to injure and cause harm to Plaintiff LRC.

51. As a direct and proximate result of Defendant's copyright infringement, Plaintiff has suffered monetary damages in an amount to be proven at trial.

52. Alternatively, Plaintiff seeks an award of statutory damages pursuant to 17 U.S.C.A. § 504(c)(1) for Miramax's infringements. Plaintiff demands that an Order be entered pursuant to 17 U.S.C.A. § 504 awarding enhanced statutory damages for each infringement of Plaintiff's copyrighted works alleged herein.

53. Plaintiff prays for an Order pursuant to 17 U.S.C.A. § 503 for the impounding of all materials used in violation of Plaintiff copyright owner's exclusive rights.

54. By reason of Defendant Miramax's acts alleged herein, Plaintiff LRC is also entitled to recover its attorneys' fees under 17 U.S.C. § 505.

## **COUNT III**

### **(Contributory Copyright Infringement - Against Pressman Defendants and Does 1-20)**

55. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 50, inclusive, as though set forth in full.

56. As set forth above, pursuant to 17 U.S.C. § 501, Defendant Miramax has infringed on the exclusive rights of Plaintiff LRC by purporting to license the Picture to third parties, including but not limited to on video-on-demand platforms. Defendant Miramax has been collecting licensing fees from third parties for the Picture and has failed to provide the sums collected to Plaintiff LRC.

57. The Pressman Defendants had actual or constructive knowledge of Miramax's infringement of Plaintiff's copyright in the Picture. The Pressman Defendants assigned their rights in the Picture to Millennium and therefore knew that they had no right to amend the

Distribution Agreement, to grant Miramax an extension of their rights thereunder, or to be paid license fees under the Distribution Agreement as of the assignment in November 1998. Nonetheless, after assigning away all of its rights in the Distribution Agreement, ERI executed purported "amendments" to the Distribution Agreement, purporting to extend Miramax's rights to exploit the Picture to 2023. Knowing these purported amendments were invalid and that Miramax's rights to exploit the Picture expired in 2010, the Pressman Defendants nonetheless accepted license fees from Miramax exploiting the Picture after its rights to do so had expired, thereby infringing on Plaintiff's copyright.

58. The Pressman Defendants made a material contribution to Miramax's infringement of Plaintiff's copyright in the Picture by executing the purported amendments, purporting to extend Miramax's rights to exploit the Picture to 2023 and accepting license fees from Miramax from its infringing exploitation of the Picture.

59. The Pressman Defendants' contributory infringement of Plaintiff's copyright in the Picture was, and continues to be, willful, intentional and malicious, subjecting the Pressman Defendants, and each of them, to liability therefore.

60. As a direct and proximate result of the Pressman Defendants' contributory infringement, Plaintiff has suffered monetary damages in an amount to be proven at trial.

61. Alternatively, Plaintiff seeks an award of statutory damages pursuant to 17 U.S.C.A. § 504(c)(1) for the Pressman Defendants' contributory infringements. Plaintiff demands that an Order be entered pursuant to 17 U.S.C.A. § 504 awarding enhanced statutory damages for each contributory infringement of Plaintiff's copyrighted works alleged herein.

62. Alternatively, by reason of the Pressman Defendants' acts of contributory copyright infringement, the Pressman Defendants, and each of them, have obtained direct and indirect profits they would otherwise not have realized but for their infringement of the

Plaintiff's copyright in the Picture. As such, Plaintiff is entitled to disgorgement of the Pressman Defendants' profits directly and indirectly attributable to the infringement of Plaintiff's copyright in the Picture in an amount to be established at trial.

63. Plaintiff prays for an Order pursuant to 17 U.S.C.A. § 503 for the impounding of all materials used in violation of Plaintiff copyright owner's exclusive rights.

64. By reason of Defendant Miramax's acts alleged herein, Plaintiff is also entitled to recover its attorneys' fees under 17 U.S.C. § 505.

## COUNT IV

### (Intentional Interference with Contractual Relations - Against Pressman Defendants and Does 1-20)

65. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 60, inclusive, as though set forth in full.

66. At all relevant times, the Pressman Defendants knew that Miramax, on the one hand, and the successors-in-interest to the Pressman Defendants' rights under the Distribution Agreement, including Millennium, IMF, Pacifica, and Plaintiff (the "Successors"), on the other hand, were in an economic relationship that would probably have resulted in an economic benefit to Plaintiff, directly, and as successor-in-interest to the rights of the Pressman Defendants, and the other Successors under the Distribution Agreement.

67. Plaintiff is informed and believes that the Pressman Defendants engaged in intentional wrongful and fraudulent acts that were intended to interfere in the economic relationships among Miramax and the Successors, including Plaintiff. In particular, the Pressman Defendants knowingly executed invalid amendments purporting to extend Miramax's rights to exploit the Picture and collected license fees from Miramax's exploitation of the Picture long after the Pressman Defendants had assigned away their rights to the Picture in 1998.

68. As a direct and proximate result of the Pressman Defendants' conduct, as

hereinabove alleged, Plaintiff has been damaged in a sum that will be shown according to proof at trial.

69. Plaintiff is informed and believes, and on that basis alleges, that in engaging in the misconduct alleged herein, the Pressman Defendants acted with malice, oppression, and in willful disregard, of Plaintiff's rights and interest, thus entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or make an example of the Pressman Defendants.

## COUNT V
### (Restitution - Against Pressman Defendants and Does 1-20)

70. Plaintiff incorporates herein by reference the allegations contained in Paragraphs 1 through 65, inclusive, as though set forth in full.

71. The Pressman Defendants obtained a benefit and have been unjustly enriched as a result of Miramax's infringing exploitation of the Picture, the Pressman Defendants' contributory infringement of Plaintiff's copyright, the Pressman Defendants' intentional interference with Plaintiff's contractual relations, and Miramax's wrongful distribution of license fees under the Distribution Agreement to the Pressman Defendants.

72. The Pressman Defendants are aware that they have received such benefits and that such receipt was wrongful given that the Pressman Defendants assigned away all of their rights under the Distribution Agreement in 1998 and because, as the Pressman Defendants were well aware, Miramax had no right to exploit the Picture after its rights expired under the Distribution Agreement in 2010.

73. It would be unjust to allow the Pressman Defendants to retain the monetary benefits that they have realized through the unlawful conduct of the Pressman Defendants and Miramax.

74. As a result of the Pressman Defendants' and Miramax's wrongful actions,

Plaintiff is entitled to an award of restitution in an amount by which the Pressman Defendants have been enriched, which will be shown according to proof at trial.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For actual and compensatory damages in an amount to be proven at trial;

2. Alternatively, Plaintiff seeks an award of statutory damages pursuant to 17 U.S.C.A. § 504(c)(1) for Defendants' infringements. Plaintiff demands that an Order be entered pursuant to 17 U.S.C.A. § 504 awarding enhanced statutory damages for each infringement of Plaintiff's copyrighted works alleged herein;

3. Plaintiff prays for an Order pursuant to 17 U.S.C.A. § 503 for the impounding of all materials used in violation of Plaintiff copyright owner's exclusive rights;

4. By reason of Defendant Miramax's acts alleged herein, Plaintiff LRC is also entitled to recover its attorneys fees under 17 U.S.C. § 505;

5. That an order be entered compelling Defendants to account for all gains, profits and advantages derived by each Defendant by their breach of contract or infringement of Plaintiff's rights in the Picture;

6. That injunctive relief be granted preventing and restraining infringement of Plaintiff's copyright by ordering Defendants not to publish, distribute, or in any way disseminate the Picture;

7. For disgorgement in an amount to be proven at trial;

8. For restitution in an amount to be proven at trial;

9. For punitive damages against the Pressman Defendants for their interference in Plaintiff's contractual rights;

10. For attorneys' fees and costs as permitted by applicable law;

11. For pre-judgment and post-judgment interest at the maximum legal rate; and

12. For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands trial by jury on all issues so triable.

DATED: December 4, 2020
New York, New York

Respectfully Submitted,

EISNER, LLP

By: /s/ Simon Miller
Simon J.K. Miller (NY SBN 2607588)
smiller@eisnerlaw.com
152 West 57th Street, 48th Floor
New York, New York 10019
Ph. (646) 876-2600

Jeremiah Reynolds (CA SBN 223554)
*Pro hac vice forthcoming*
jreynolds@eisnerlaw.com
Katherine Pierucci
*Pro hac vice forthcoming*
kpierucci@eisnerlaw.com
9601 Wilshire Blvd., 7th Floor
Beverly Hills, CA 90210
Ph. (310) 855-3200

*Attorneys for Plaintiff*
*Library Rights Company (UK) Ltd.*