UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBRARY RIGHTS COMPANY (UK) LTD., a United Kingdom company, | Civil Action No.: 1:20-cv-09396 (AT) |
| Plaintiff, | ECF CASE |
| -against- | **ORAL ARGUMENT REQUESTED** |
| MIRAMAX, LLC, a Delaware limited liability company; MIRAMAX FILM CORP., a Delaware corporation; MIRAMAX FILM NY, LLC, a New York limited liability company; ERPFC RELEASING, INC., a California corporation; EDWARD R. PRESSMAN FILM CORPORATION, a Delaware corporation; DOES 1-20, | |
| Defendants. | |

**MEMORANDUM OF LAW OF MIRAMAX, LLC, MIRAMAX FILM CORP., AND MIRAMAX FILM NY, LLC IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000

*Attorneys for Defendants Miramax, LLC, Miramax Film Corp., and Miramax Film NY, LLC*

Defendants Miramax, LLC, Miramax Film Corp., and Miramax Film NY, LLC (collectively, "Miramax") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Library Rights Company (UK) Ltd.'s ("Plaintiff" or "LRC") First Amended Complaint ("FAC") (Dkt. 28) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

## PRELIMINARY STATEMENT

Miramax is an established entertainment company known for producing and distributing films and television shows. Based on Miramax's reputation as a successful distributor, in 1994, Miramax was chosen to distribute the critically acclaimed undead superhero film *The Crow*. *The Crow* became a cult classic. Based on *The Crow's* success, between 1996 and 2005, *The Crow's* producer, defendant Edward R. Pressman Film Corporation ("ERPFC") created three sequels. Each time ERPFC looked to distribute a new film in *The Crow* franchise, it chose Miramax. It did so based on Miramax's successful track record of distributing *The Crow* franchise. For each film in the franchise, Miramax Film Corp. and an ERPFC affiliate (and defendant) ERPFC Releasing, Inc. ("ERI"), entered into written distribution agreements. On or about September 22, 1998, ERI and Miramax Film Corp. entered into a third distribution agreement ("Distribution Agreement") for certain rights to the third motion picture in the franchise entitled *The Crow: Salvation a/k/a The Crow III* (the "Picture"), including but not limited to theatrical, non-theatrical, home video, and video-on-demand distribution in the United States, Canada, and their respective territories. The Picture is the only film at issue in this action.

Based on Miramax's successful distribution of *The Crow* franchise ERPFC and ERI (collectively, "Pressman") continued to work closely with Miramax and extend Miramax's distribution rights to *The Crow* franchise, including the Picture. For approximately 27 years,

Miramax and Pressman have partnered to successfully distribute and promote *The Crow* franchise.

Throughout their long relationship, Pressman has continuously represented and warranted to Miramax that it had the right to enter into the Distribution Agreement and all subsequent license agreements relating to the Picture. These subsequent license agreements, executed in 2011, 2015, and 2019, permitted Miramax to continuously distribute the Picture in the contractually specified territory through 2023. Throughout its contractual relationship with Pressman, Miramax complied with its contractual obligations and timely accounted for, and paid Pressman, all monies owed under the Distribution Agreement and subsequent license agreements. ***There are no allegations otherwise.***

However, in late 2020, over 25 years after Pressman and Miramax started working together on *The Crow* films, and 22 years after Miramax started distributing the Picture, Plaintiff attempted to assert competing distribution rights for the Picture. Now, Plaintiff seeks to recover supposed damages dating back to 2009 for an alleged breach of the Distribution Agreement. A contract to which Plaintiff was not a party.

Plaintiff alleges that pursuant to a foreclosure sale on or about June 17, 2009, it stepped into ERI's shoes and since then, it has had the right to control the Picture's distribution. Thus, Plaintiff maintains that it, not Miramax, has the right to distribute the Picture. Further, Plaintiff alleges that any further licensee agreements between ERI and Miramax after the Distribution Agreement were invalid. Plaintiff's allegations against Miramax were asserted for the first time ***over a decade after*** it allegedly obtained the rights to the Picture. Thus, Plaintiff's time-barred claims should be dismissed and/or stricken based on preemption and the relevant statutes of limitation.

**First**, because Plaintiff's breach of contact claim is preempted, it should be dismissed. Here, as a matter of law, Plaintiff fails to properly plead a breach of contract claim. Plaintiff's attempt to transform a garden variety copyright claim into a breach of contract claim is specifically prohibited by the Copyright Act. Moreover, courts have already ruled against this type of alchemy, explaining that a copyright infringement claim is the correct cause of action for alleged illegal distribution of a copyright. Therefore, Plaintiff's breach of contract, as pled, fails as a matter of law.

**Second**, even if Plaintiff can bring a breach of contract claim (which it cannot), the statute of limitations bars Plaintiff's claim because the alleged breach occurred almost ten (10) years before Plaintiff filed this action. Alternatively, at a minimum the Court should dismiss Plaintiff's claims for any alleged breach before November 10, 2014, six years before Plaintiff commenced this lawsuit. Plaintiff has no grounds for extending the statute of limitations as it sat on its alleged rights. Such carelessness should not be rewarded.

**Finally**, copyright claims are subject to a three year statute of limitations. Based on Plaintiff's failure to act, Plaintiff is barred from asserting copyright claims and/or requests for damages prior to November 10, 2017, *i.e.* outside the copyright statute of limitations time period.

## FACTUAL BACKGROUND

**A.      The Distribution Agreement**

Miramax is an entertainment company known for producing and distributing films and television shows. On or about May 4, 1994, ERI and Miramax Film Corp. entered into a distribution agreement for the exclusive right to distribute a motion picture entitled *The Crow* in

the United States, Canada and all of their respective territories.[1]  (FAC ¶ 1.)  The methods of distribution under the *The Crow* Agreement included: theatrical, non-theatrical, home video, video-on-demand, and all television rights.

Approximately a year later, on or about April 19, 1995, ERI and Miramax Film Corp. entered into a second distribution agreement for the second film in the franchise entitled *The Crow: City of Angeles a/k/a/ The Crow II.*

On or about September 22, 1998, ERI and Miramax entered into a third distribution agreement, the only one at issue in this action, for certain rights to the Picture (*The Crow: Salvation a/k/a The Crow III*).  (FAC ¶¶ 3, 20.)  In the Distribution Agreement, ERI represented and warranted that it had the right to enter into the Distribution Agreement with Miramax and provide the exclusive distribution rights.  Plaintiff was not involved in and was not a signatory to the Distribution Agreement.  (FAC ¶ 1 (admitting Plaintiff only allegedly acquired rights as part of a foreclosure sale).)

Finally, on or about July 22, 2002, ERPFC and Miramax entered into a fourth distribution agreement for the motion picture *The Crow: Wicked Prayer a/k/a Crow IV*.  At that point, Miramax held the distribution rights for all four *Crow* franchise films, including the Picture.

**B.**      **Subsequent Licensing Agreements between Pressman and Miramax**

Subsequently, ERI and Miramax entered into several additional license agreements relating to the Picture, whereby, among other rights, Miramax obtained the right to continuously distribute the Picture through at least 2023 in the contractually described territory.  The first additional license agreement was entered into on or about April 1, 2011 ("2011 License").  (FAC

---

[1] Miramax has copies of the agreements referenced in its Motion to Dismiss.  Miramax, Plaintiff, and Pressman are currently in the process of executing a Protective Order.  If requested, the agreements can be provided once the Protective Order is in place.

¶ 4.)  The 2011 License contained three potential termination dates, depending on whether Miramax met certain financial benchmarks.  The final potential termination date was December 31, 2020.  Under the 2011 License, the Distribution Agreement was deemed to be "restated in [its] entirety under this Agreement."  This included ERI's representation that it had the right to enter into the 2011 License and could provide Miramax the exclusive rights to the *Crow* franchise films, including the Picture.

On or about June 16, 2015, ERI and Miramax entered into an amendment to the 2011 License confirming Miramax's exclusive distribution rights extend through December 31, 2020, in exchange for Miramax's $1 million payment to ERI for all four *Crow* films ("2011 First Amendment").  (FAC ¶ 4.)  The 2011 Amendment specifically referenced and incorporated the terms of the 2011 License.

Finally, on or about March 19, 2019, ERI and Miramax entered into a second amendment to the 2011 License, whereby ERI extended Miramax's exclusive distribution rights through December 31, 2023 for all four *Crow* films ("2011 Second Amendment").  (FAC ¶ 4.)  The 2011 Second Amendment specifically references and incorporates the terms of the 2011 License and 2011 First Amendment.  The 2011 License, 2011 First Amendment, and 2011 Second Amendment may be collectively referred to as the 2011 Agreement.

**C.**       **Plaintiff's Purported Claim Against Miramax**

In the FAC, Plaintiff alleges that on or about June 17, 2009, pursuant to a foreclosure sale, it obtained the rights to the Picture and assumed ERI's position under the Distribution Agreement.  (FAC ¶ 27.)  The chain of title whereby Plaintiff claims to have obtained the rights to the Picture (FAC ¶ ¶ 23-26) has not been verified by Miramax, but is accepted as true for the purposes of this motion.

Plaintiff alleges that Miramax impermissibly publicly distributed the Picture from 2011 to present.  (FAC ⁋ 4 ("Since the invalid extension [2011] through the filing of this lawsuit, Miramax has exploited the Picture…")  Plaintiff also stated that Miramax allegedly failed to provide accounting statements and payments, and instead continued to make payments to Pressman after June 2009.  (FAC ⁋⁋ 39, 47.)  However, in spite of allegedly acquiring the Picture in June 2009 and the fact that Miramax allegedly openly and publicly exploited the Picture in multiple media since at least 2011, it is undisputed that Plaintiff failed to file a lawsuit and attempt to assert its alleged rights, for more than 10 years, or until November 10, 2020.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a pleading to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The allegations in the complaint must be "enough to raise a right of relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion, the complaint must establish that the requested relief is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The plausibility standard is only satisfied where "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although a court ordinarily must accept a plaintiff's allegations as true, it need not accept as true allegations that merely "offer[] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.' "  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,' "  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Instead, the complaint must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations.  *Twombly*, 550 U.S. at 556.  If plaintiffs "have not nudged

their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

In deciding a motion to dismiss, a court may consider any document referenced in the complaint – even if not specifically attached to the complaint or incorporated by reference – so long as the document is integral to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A document is integral to the complaint if the complaint "relies heavily upon its terms and effect." *Id.* (internal citations and quotations omitted). In this context, "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing suit" are considered part of the complaint. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

Here, Plaintiff refers to, relies on, and alleges a breach of the Distribution Agreement in its claims for breach of contract and copyright infringement. Despite the fact that the Distribution Agreement forms the basis of Plaintiff's claims, it is not attached to the FAC. Nevertheless, under well-established law, this Court may properly consider what is said about these documents in deciding this Motion without transforming it into a motion for summary judgment. *See, e.g.*, *Chambers*, 282 F.3d at 153, *Rothman*, 220 F.3d at 88.

"A court may dismiss a copyright infringement claim on statute of limitations grounds at the pleadings stage where 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.' " *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215 (VSB), 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018) (*quoting Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)).

**THE COURT SHOULD DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST MIRAMAX PURSUANT TO RULE 12(B)(6) BECAUSE THE CLAIM IS PREEMPTED**

Plaintiff's breach of contract claim is preempted by the Copyright Act. When Congress revised the copyright laws in 1976, it specifically provided for preemption of all state rights

equivalent to those within the scope of federal copyright law." *Am. Movie Classics Co. v. Turner Entm't Co.*, 922 F.Supp. 926, 930 (S.D.N.Y. Mar. 29, 1996). Section 301 of the Copyright Act provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). As the Second Circuit has stated: The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106. *See* 17 U.S.C. § 301(a); *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 848 (2d Cir. 1997). The first prong of this test is called the "subject matter requirement," and the second prong is called the "general scope requirement." *Nat'l Basketball Ass'n*, 105 F.3d at 848.

## A.    Miramax Satisfies the Subject Matter Prong

Miramax satisfies the preemption subject matter prong. The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works. *Nat'l Basketball Ass'n*, 105 F.3d at 848–49. Here, the first requirement is indisputably met as the Picture falls within the type of works protected by the Copyright Act under 17 U.S.C. § 102. Moreover, as Plaintiff seeks the protection of the Copyright Act in its FAC, it cannot dispute that the Picture falls within its purview. *See BanxCorp v. Costco Wholesale Corp.*, 723 F.Supp.2d 596, 611

(S.D.N.Y. Jul. 14, 2010) (explaining that when a plaintiff seeks protection of the copyright act, it essentially acknowledges that the subject matter requirement is met).  Thus, the first prong is met.

**B.      The General Scope Requirement is Also Met**

Miramax also meets the general scope requirement.  The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law.  *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir. 1992).  In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display.  *See* 17 U.S.C. § 106; *Computer Assocs.,* 982 F.2d at 716.  Further, the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim.  *Nat'l Basketball Ass'n,* 105 F.3d at 851; *Computer Assocs.,* 982 F.2d at 716.

To determine whether a claim is qualitatively different, courts look at "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced."  *Computer Assocs.,* 982 F.2d at 716.  Moreover, courts take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.  *Nat'l Basketball Ass'n,* 105 F.3d at 851.  Awareness or intent, for instance, are not extra elements that make a state law claim qualitatively different.  *Id*.; *Computer Assocs.,* 982 F.2d at 717.  On the other hand, a state law claim is qualitatively different if it requires such elements as breach of fiduciary duty, or possession and control of chattels.  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc*., 373 F.3d 296, 305–06 (2d Cir. 2004).

The second requirement is also met because Plaintiff's state law breach of contract claim seeks to vindicate rights already protected by copyright law under 17 U.S.C. § 106, namely, the

exclusive rights to reproduce the copyrighted work, distribute copies, display the copyrighted

work publicly and collect monies from doing so.  Specifically, Plaintiff alleged Miramax

breached the contract by "exploit[ing] the Picture on video and video-on-demand platforms even

after its license to do so expired on February 16, 2010 through the date of filing this lawsuit."

(FAC ⁋ 39.)  Exploiting *i.e.* distributing the Picture is "an act that would, by itself, infringe one

of the exclusive rights provided by federal copyright law."  *Briarpatch*, 373 F.3d at 305; 17

U.S.C. § 106.  Plaintiff's allegations make it clear that, the elements needed to establish its

breach of contract claim are not qualitatively different from those needed to establish the

copyright infringement claim.  The nucleus of Plaintiff's claim is a copyright infringement claim.

Plaintiff will undoubtably argue that adding the collection of fees and the accounting

allegations to its breach of contract claim amounts to including the extra elements that make the

nature of the action qualitatively different from the copyright infringement claim.  They do not.

They are byproducts of the alleged copyright claim.

In fact, the Southern District of New York addressed this exact fact pattern in *eScholar,*

*LLC v. Otis Educ. Sys*. 387 F. Supp. 2d 329 (S.D.N.Y. Mar. 29, 2005).  There, eScholar, the

owner of a computer program known as the "eScholar Complete Data Warehouse," entered into

a license agreement whereby Otis served as a reseller of the eScholar Complete Data Warehouse.

*Id*. at 330.  Plaintiff eScholar filed suit against Otis for (1) distributing certain material without

consent (and obtaining monies from said distribution), (2) refusing to allow eScholar to audit

Otis's books, and (3) failing to pay royalty fees.  *Id*.  Otis filed a motion to dismiss the breach of

contract claim based on preemption.  The court concluded that the motion to dismiss should "be

granted to the extent it seeks to enforce Plaintiff's exclusive right to reproduce and distribute its

work, but denied to the extent it seeks to enforce contractually guaranteed rights to audit books and receive royalty fees." *Id*. at 332.

This is exactly the relief Miramax is seeking in making its preemption argument. From the face of the FAC, it is obvious that the relief Plaintiff is seeking is preempted. Here, Plaintiff claims that Miramax exploited and distributed the Picture beyond the expiration of the license and obtained monies for doing so. (FAC ¶ 39.) That is conduct that the Copyright Act prohibits and for which it grants remedies. *See* 17 U.S.C. § 106. Miramax's promise not to infringe the Plaintiff's alleged copyright by distributing or profiting from it is the same as its duty to comply with the copyright law, and is therefore preempted by it. *See* 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][a][i] (2017) ("preemption should be found absent to the extent that a breach of contract cause of action alleges more than simply reproduction (or adaptation, distribution, etc.) of a copyrighted work."). Courts are clear that this type of claim is preempted. *Universal Instruments Corporation v. Micro Systems Engineering, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019) (explaining that a plaintiff cannot avoid preemption by labeling a claim breach of contract); *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 230 (2d Cir. 1982) (holding that a licensor's suit against a licensee whose license had expired was for copyright infringement, not breach of contract). Therefore, Miramax asks that the Court review Plaintiff's failure to plead a breach of contract claim appropriately and dismiss Plaintiff's breach of contract claim as it is preempted under the Copyright Act. To the extent the Court believes Plaintiff pleads an adequate separate breach of contract claim based on accounting, Miramax would ask that the Court still dismiss Plaintiff's distribution breach of contract claim.

**THE COURT SHOULD DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIM AGAINST MIRAMAX PURSUANT TO RULE 12(B)(6) BECAUSE THE CLAIM IS BEYOND THE STATUTE OF LIMITATIONS**

To the extent the Court believes Plaintiff's breach of contract claim is, in whole, or in part, not preempted, Plaintiff's breach of contract claim fails for a second independent reason, it was brought outside New York's six year statute of limitations for breach of contract claims. Moreover, Plaintiff cannot utilize the equitable tolling doctrine to save its claim because New York law does not recognize the discovery rule for breach of contract claims and Plaintiff cannot show fraudulent concealment because it has not exercised due diligence. Therefore, Plaintiff's breach of contract claim should be dismissed.

**A.**      **Plaintiff's Delay in Initiating this Action Bars its Breach of Contract Claim**

Plaintiff's claim is time-barred. Under New York's six (6) year statute of limitations for breach of contract actions (N.Y. C.P.L.R. 213(2)), Plaintiff's time to commence suit expired on or about February 17, 2016, almost four years before Plaintiff filed suit. According to Plaintiff, any rights Miramax had to exploit the Picture expired on February 16, 2010. (FAC ⁋ 39.) Plaintiff contends that Miramax continued to exploit the Picture after its rights expired. (*Id.*) Essentially, Plaintiff seeks to recover for an alleged breach that it alleges occurred on February 17, 2010, when Miramax's rights allegedly expired, yet it kept distributing the Picture. (FAC ⁋⁋ 4, 39.) The law does not support Plaintiff's position.

Generally, a claim accrues "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012) (internal quotation marks omitted) (*quoting Aetna Life & Cas. Co. v. Nelson*, 67 N.Y.2d 169, 175 (1986)). Therefore, a claim for breach of contract "ordinarily accrues ... upon breach," even if the claimant does not become "aware of the breach or wrong" until some point after its occurrence. *Guilbert v. Gardner*, 480

F.3d 140, 149 (2d Cir. 2007); *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) (holding that New York follows the traditional definition of accrual: "a cause of action accrues at the time and in the place of the injury.")

Therefore, under Plaintiff's own allegations—which are taken as true for the purposes of this motion—Miramax would have breached the agreement on February 17, 2010, more than ten-and-a-half years prior to the filing of Plaintiff's initial complaint on November 10, 2020, when it continued to exploit the Picture after the license allegedly expired. Even assuming all facts in Plaintiff's favor, the original complaint was filed approximately four years after the statute of limitations expired.[2] Therefore, Plaintiff's breach of contract claim is barred by the six-year statute of limitations and must be dismissed.

*Alternatively*, even if Plaintiff's allegations were to be read to allege a continuing contractual duty by Miramax, such that the alleged breach is also continuing, the statute of limitations bars any breach of contract claim accruing before November 10, 2014.

The continuing wrong doctrine is essentially an exception to the six-year statute of limitations. New York law allows that where "a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). "However, the 'continuing wrong' exception is narrow." *Maloul v. New Colombia Resources, Inc.,* 2017 WL 2992202, at *5 (S.D.N.Y. Jul. 13, 2017). The doctrine distinguishes between "a single wrong that has

---

[2] Plaintiff's FAC contradicts itself, by asserting two different dates of Miramax's alleged breach. At one point, Plaintiff alleges that Miramax breached the Distribution Agreement when it exploited the Picture after February 16, 2010, when its rights allegedly expired. (FAC ¶ 39.) Under that rationale, the date of breach would be February 16, 2016 and Plaintiff would have filed the initial complaint approximately 4 years after the statute of limitations expired. Alternatively, Plaintiff claims that "[s]ince the invalid extension [2011] through the filing of this lawsuit, Miramax has exploited the Picture…" (FAC ¶ 4). Under these allegations, the date of breach would be, on or about, April 1, 2011, the date of the 2011 License. (*Id*.) Even utilizing April 1, 2011 as the date of Miramax's alleged breach, Plaintiff's claims fall outside the statute of limitations and should be dismissed.

continuing effects and a series of independent, distinct wrongs," and allows an exception to New York's usual accrual rules only in the latter case. *Henry v. Bank of Am.,* 48 N.Y.S.3d 67, 70 (1st Dep't 2017) (internal quotation mark omitted). Thus, ***"where a plaintiff asserts a single breach—with damages increasing as the breach continued—the continuing wrong theory does not apply."*** *Id*. (emphasis added); *see also Kahn v. Kohlberg, Kravis, Roberts & Co*., 970 F.2d 1030, 1039 (2d Cir. 1992) (explaining that plaintiffs could not use continuing wrong theory for "ongoing" violation, because "performance under the contract merely affects damages and does not give rise to a new cause of action"); *Comm Trade USA, Inc. v. INTL FCStone, Inc.,* No. 13 Civ. 3998 (KBF), 2014 WL 787912, at *9 (S.D.N.Y. Feb. 27, 2014) ("To the extent that plaintiff asserts simply an ongoing breach of the contract—with damages increasing as the breach continued—the continuing wrong theory does not apply."). The continuing wrong doctrine only "extend[s] the statute of limitations when [a] contract imposes a continuing duty" that is repeatedly breached. *Henry*, 48 N.Y.S.3d at 70.

However, the allegations as detailed in the FAC do not constitute a continuing wrong under New York law. Plaintiff alleges that Miramax has "continuously exploited the Picture on video and video-on-demand platforms" and "continuously and repeatedly collected license fees through the date of filing this lawsuit for its improper exploitation." (FAC ⁋ 39.) While Plaintiff is attempting to allege a continuous violation, its claims fall short because all of Miramax's alleged actions tie back to a single purported breach with damages allegedly escalating. Therefore, the continuing wrong doctrine does not apply. However, even if it were to apply, the statute of limitations still bars any breach of contract claim accruing before November 10, 2014.

**B.      Neither Tolling nor the Discovery Rule Saves Plaintiff's Breach of Contract Claim**

Because Plaintiff clearly understands that its late-filed action is barred by the statute of limitations, Plaintiff seeks to do an end-run around New York law by attempting to allege facts

regarding a potential tolling argument. Plaintiff will argue that the statute of limitations should be tolled because Miramax allegedly took steps to prevent Plaintiff from discovering the breach. (FAC ¶¶ 30-31, 40.) New York law does not support this argument.

"New York does not apply the discovery rule to statutes of limitations in contract actions." *Deutsche Bank N'tl Trust Co. Trustee for Harborview Mort. Loan Trust v Flagstar Capital Markets Corp.*, 88 N.Y.S.3d 96, 99 (N.Y., Oct. 16, 2018) (internal citations omitted); *ACE Sec. Corp. v. DB Structured Prods., Inc*., 25 N.Y.3d 581, 594 (2015) (rejecting "the 'discovery' rule [as] to statutes of limitations in contract actions"); *Marshall v. Hyundai Motor Am*., 51 F Supp. 3d 451, 461 (S.D.N.Y. 2014) ("[a]ccrual of a claim is not dependent upon any date when discovery of the alleged deceptive practice is said to occur. Rather, such claims accrue when a plaintiff is injured by the actions alleged to have violated the Statute.").[3]

Moreover, equitable tolling and/or fraudulent concealment would not apply here. Under New York law they are warranted only in rare and exceptional circumstances. *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011). To argue equitable tolling, LRC must establish: "(1) that [they] had] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).[4]

Plaintiff has the burden to plead and establish equitable tolling and/or fraudulent concealment. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). Plaintiff falls woefully short.

---

[3] When a federal court adjudicates a pendant state law claim it applies the discovery rule law of the jurisdiction. *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 226 (S.D.N.Y. 1992). Therefore, the discovery rule under New York law would be applicable here.

[4] Fraudulent concealment share similar factors: (1) there was in fact a wrongful concealment, (2) which concealment prevented the plaintiff's discovery of the nature of the claim during the limitations period, and (3) the plaintiff exercised due diligence in pursuing discovery of the claim. *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 60 (2d Cir.1998); *Marvel Worldwide, Inc. v. Kirby*, 756 F.Supp.2d 461, 472 (S.D.N.Y. Nov. 22, 2010).

In fact, ***Plaintiff fails to plead any facts*** illustrating its diligence during the limitations period. Plaintiff's diligence is required to show either equitable tolling or fraudulent concealment. The pleading failure alone bars Plaintiff from asserting such a claim.

Additionally, while Plaintiff provides conclusory allegations regarding Miramax's alleged concealing acts (FAC ¶¶ 2, 28, 30-31), these allegations do not show or claim that Plaintiff was prevented by Miramax from discovering any alleged breach. In fact, Plaintiff cannot make such a claim because no action allegedly taken by Miramax erases the fact that Plaintiff knew Miramax was the licensee at the time it took over the agreement in 2009, it had the Distribution Agreement, knew it was supposed to receive payment, yet never received payment in 2010. (FAC ¶ 1.) Thus, Plaintiff was effectively (and admittedly) on notice of potential claims. Moreover, Plaintiff never alleges Miramax took any actions that stopped Plaintiff from discovery those facts. In fact, Plaintiff specifically admits that for at least the past decade Miramax has allegedly openly and publicly exploited the Picture in multiple media. (FAC ¶¶ 2, 4, 28, 39.) Concealment is impossible under Plaintiff's own allegations. Thus, Plaintiff cannot avail itself of equitable tolling and any breach of contract claim is barred by the statute of limitations in its entirety, or, in the alternative, Plaintiff is barred from any alleged breach of contract prior to November 10, 2014. This includes any breach of contract claim for accounting, assuming such a claim survived Miramax's preemption argument, which it should not.[5]

---

[5] Additionally, Plaintiff acknowledges in the FAC that it does not have any accounting claim beyond the last 12 months. Plaintiff's FAC acknowledges that under the Distribution Agreement: "[s]aid books of account and records may be examined and/or audited and copied by [ERI] and its representatives once in each 12-month period." (FAC ¶ 20.) Plaintiff would not be permitted under the Distribution Agreement to demand an accounting for any more than the last 12 months. Therefore, for that independent reason, Plaintiff cannot bring a valid accounting claim, from 2009 to present.

**THE COURT SHOULD DISMISS PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM AGAINST MIRAMAX PURSUANT TO RULE 12(B)(6) BECAUSE THE CLAIM IS BEYOND THE STATUTE OF LIMITATIONS**

**A.    Plaintiff's Copyright Infringement is Limited to Claims after November 10, 2017**

Plaintiff's copyright infringement claim against Miramax should be dismissed as it falls outside the statutory time for bringing a claim.  Enforcing the applicable statute of limitations is consistent with the Copyright Act's goal of "enhancing predictability and certainty of copyright ownership" (*Cmty. For Creative NonViolence v. Reid*, 490 U.S. 730, 749 (1989)) as well as "the principles of repose integral to a properly functioning copyright market." *Merchant v. Levy*, 92 F.3d 51, 57 (2d Cir. 1996).  These principles weigh in favor of dismissal of time-barred claims where, as in this case, Plaintiff has inexcusably waited almost ten (10) years to bring this action against Miramax.

A civil copyright infringement action must be commenced "within three years after the claim accrued."  17 U.S.C. § 507(b).  The Second Circuit recently adopted the "discovery rule" under which "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.,* 748 F.3d 120, 125 (2d Cir.2014).   Under *Psihoyos*, "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Id*.  Moreover, according to the Supreme Court:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

> Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the

> copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

*Petrella v. Metro–Goldwyn–Mayer, Inc.*, 572 U.S. 663, 671-672 (2014); *see also Stone v. William*s, 970 F.2d 1043, 1049–50 (2d Cir.1992) (holding that "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief .... Recovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts").

In the present action, Plaintiff filed its original complaint on November 10, 2020.  (Dkt. No. 1.)  Therefore, any infringement claims that accrued before November 10, 2017, are untimely and should be dismissed.

**B.**     **Plaintiff Had Both Actual and Constructive Notice of the Alleged Infringement**

Plaintiff will argue that its copyright claims should date back further than November 10, 2017 because it did not have actual or constructive notice of the alleged copyright violations. This is untrue.  From the face of the FAC, it is apparent that Plaintiff had actual notice of the alleged violation by Miramax which triggers a duty to investigate as well as constructive notice of Miramax's alleged continued open and public exploitation of the Picture in multiple media since at least 2011.

Plaintiff had actual notice of Miramax's alleged failure to provide royalties.  The FAC alleges that: (1)  Plaintiff acquired the rights to the Picture on or about June 17, 2009 (FAC ⁋ 45); (2)  the acquisition included all rights under the Distribution Agreement pursuant to a foreclosure sale, which included, Miramax's alleged "obligat[ion] to send accounting statements to Plaintiff to report license fees earned" (FAC ⁋⁋ 27-28); (3)  Miramax's right to exploit the Picture allegedly terminated on February 16, 2010 (FAC ⁋ 39); and (4) at minimum, Miramax had the right to distribute the Picture under Plaintiff's ownership, from June 17, 2009 through February 16, 2010. (FAC ⁋ 22.)  Yet, in spite of Plaintiff believing it owned the rights to the

Picture, understanding Miramax allegedly owed it money and accounting statements, and not receiving those statements on the contractually obligated dates, ***Plaintiff did nothing***. Plaintiff provides no excuse for its conduct because it cannot. The truth is Plaintiff understood and had actual notice of what it was allegedly supposed to receive and knew it did not receive it. It also had actual notice that Miramax and Pressman were openly and publicly exploiting their rights to the Picture without Plaintiff. These facts effectively bar Plaintiff's copyright claim now.

However, the Court need not believe that Plaintiff had actual notice to grant Miramax's motion to dismiss. Under Second Circuit law, constructive discovery provides ample justification to grant Miramax's motion. Here, based on Plaintiff's own allegations, it is obvious constructive discovery exists.

Constructive discovery occurs, and the three year statute of limitations begins to run when "the copyright holder discovers, ***or with due diligence should have discovered***, the infringement." *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 466 (S.D.N.Y. 2019) (*quoting Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (emphasis added)). A plaintiff "should have discovered" the infringement when they had a hint or suspicion of injury such that they were put on inquiry notice. *See Thompson v. Metropolitan Life Ins. Co.,* 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001).

There can be no doubt from the aforementioned circumstances that Plaintiff had constructive (as well as actual) notice of Miramax's alleged failures. Plaintiff allegedly obtained the exclusive distribution rights in the Picture and recorded those rights on or around June 18, 2009. (FAC ⁋ 19.) Plaintiff admits that at minimum, Miramax had the right to distribute the Picture through February 16, 2010. (FAC ⁋ 22.) Plaintiff also alleges that Miramax never paid it any licensing fees. (FAC ⁋ 33.) However, if Plaintiff is correct, it should have received license

fees from Miramax for the period of June 18, 2009 to February 16, 2010. Yet, in spite of never receiving such fees, it did no investigation and made no demand for payment until November 2020. This scenario defines constructive notice. *See Merck & Co., Inc. v. Reynolds,* 559 U.S. 633, 653 (2010) (explaining that the limitations period begins to run when "a reasonably diligent plaintiff would have discovered the facts constituting the violation ... irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.") Plaintiff knew it was supposed to receive money, did not receive money, yet it took no action. Moreover, Plaintiff specifically admits that for at least the past decade Miramax has allegedly openly and publicly exploited the Picture in multiple media. (FAC ¶¶ 2, 4, 28, 39.) A plaintiff who sits on its rights should not be permitted to recover at such a late date.

Under circumstances similar to this one, courts have found that a motion to dismiss is proper. In *Minden Pictures, Inc. v. Buzzfeed, Inc.,* Minden sued Buzzfeed for copyright infringement over the use of 40 photographs. 390 F.Supp.3d 461, 465 (S.D.N.Y. 2019). Buzzfeed filed a motion to dismiss for 24 of the photographs asserting that the use occurred more than three years prior to the filing of the initial complaint. *Id*. at 466. In granting the motion to dismiss regarding the 24 photographs at issue, the court concluded that:

> …a reasonable copyright holder in Minden['s] position – that is, a seasoned litigator that has filed 36 lawsuits to protect its copyrights, beginning as early as July of 2010 – should have discovered, with the exercise of due diligence, that its copyright was being infringed within the statutory time period. Courts may consider the relative sophistication of parties in a copyright suit…Some of Buzzfeed's articles were posted as early as 20111 and Minden Pictures provides no explanation for its delayed filing of this lawsuit beyond its allegation that it had no reason to discover the alleged infringement prior to 2017.

> *Minden Pictures, Inc. v. Buzzfeed, Inc.,* 390 F.Supp.3d 461, 467 (S.D.N.Y. 2019).

The court, citing the Second Circuit, went on to explain that "[A] claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect

himself by seeking legal advice. A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *Minden Pictures, Inc. v. Buzzfeed, Inc.,* 390 F.Supp.3d 461, 467 (S.D.N.Y. 2019) (*citing Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (internal citations omitted).

Here, as in *Minden*, Plaintiff knew enough of the critical facts to be deemed on notice under the law. Plaintiff's Senior Vice President and COO is a former Miramax employee with knowledge of the rights. Further, Plaintiff admitted knowing that Miramax allegedly should have been providing financial statements to them regarding royalties but did not. (FAC ⁋⁋ 19, 22, 33.) Further, Plaintiff admits, that just like Buzzfeed, since 2010, Miramax has continued to exploit the picture openly on ***publicly available*** platforms. (FAC ⁋⁋ 4, 28, 33, Exh. A (exploitation on Fandango, Amazon, and Cinemax.) This is more than enough to claim constructive notice.

Moreover, a plaintiff is not required to know every permutation of their injury – they simply need to have a suspicion of the injury and its cause to be put on inquiry notice. *See Thompson v. Metropolitan Life Ins. Co.,* 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001). The test is not whether a plaintiff could have learned of their injury; rather, it is whether, with the application of reasonable diligence, they should have known of their injury. *Thompson*, 149 F. Supp. 2d at 52. Here, had Plaintiff undertaken ***any action whatsoever***, relating to the Picture, it would not have waited almost ten (10) years to proffer a claim. While it is true that copyright holders do not have a general duty to police their copyrights, similarly they must exercise due diligence and may not sit on their alleged rights. *H. M. Kolbe Co. v. Armgus Textile Co.,* 315 F.2d 70, 74 (2d Cir. 1963). Therefore, similar to *Minden*, it is clear that a reasonable copyright holder in

Plaintiff's position, exercising due diligence, "should have discovered" that its copyright was being violated during the three-year statute of limitations. *See also Psihoyos*, 748 F.3d at 124. This is even more true in this case where Plaintiff claimed to have acquired the rights in a foreclosure sale. (FAC ⁋ 1.) Any reasonable copyright holder who acquired new rights, would surely be interested in exploiting them. That Plaintiff had knowledge and failed to act is inexcusable. Moreover, Plaintiff offers no such excuse for its failure. Thus, the Court should dismiss Plaintiff's claims prior to November 10, 2017.

**C.** **Plaintiff Has Not Asserted Facts Necessary to Illustrate Equitable Tolling to Extend the Statute of Limitations**

Plaintiff failed to plead the necessary facts to show Miramax's alleged concealment of any potential claim. Plaintiff will likely argue that equitable tolling is appropriate here because Miramax allegedly concealed its actions. (FAC ⁋ 48.) However, Plaintiff fails to assert the necessary facts to adequately plead equitable tolling and/or fraudulent concealment.

"The doctrine of equitable tolling applies only in 'rare and exceptional circumstances' to allow a complainant to file a claim outside the applicable limitations period." *Boyd v. J.E. Robert Co.,* No. 05–CV–2455(KAM)(RER), 2011 WL 477547, at *7 (E.D.N.Y. Feb. 2, 2011) (*quoting Bertin v. United States*, 478 F.3d 489, 494 n. 3 (2d Cir. 2007)).

> Equitable tolling based on fraudulent concealment can apply in federal court if a plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.

*Koch v. Christie's Int'l PLC*, 785 F.Supp.2d 105, 116 (S.D.N.Y.2011) (*citing Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)). A claim of fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Federal Rule of

Civil Procedure 9(b).  *See Nat'l Grp. for Commc'ns & Computers, Ltd. v. Lucent Techs. Inc.,* 420 F.Supp.2d 253, 265 (S.D.N.Y. 2006).

The FAC fails to plead facts relating to the final two elements.  To meet these requirements the FAC must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989); *Cooper v. Sony Records Intern, Inc.,* 2001 WL 1223492, at *3 (S.D.N.Y. Oct. 15, 2001) (explaining that there should be allegations of questioning royalty statements).  Plaintiff provides no such facts, instead relying on conclusory allegations.  (FAC ¶ 48.)  Thus, it would be proper to dismiss on these grounds.

While Miramax admits that under very narrow circumstances the law supports equitable tolling, even without fraudulent concealment, *i.e.* where "a reasonable plaintiff in the circumstances would have been [un]aware of the existence of a cause of action", those circumstances do not apply here.  *Veltri v. Building Serv. 32B–J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004).  However, even under those very narrow circumstances, "a plaintiff must still demonstrate due diligence in order to invoke the equitable tolling doctrine."  *Bill Diodato Photography LLC v. Avon Products, Inc*., 2012 WL 3240428, at *5 (S.D.N.Y. Aug. 7, 2012).

Plaintiff, in the entirety of its FAC, provides no evidence or allegations regarding its own due diligence and omits recognition of the open and public exploitation of the Picture. Therefore, under no circumstances will equitable tolling apply.  Plaintiff is subject to the statute of limitations and bared from bringing claims that accrued prior to November 10, 2017.

**THE COURT SHOULD DISMISS PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM AGAINST MIRAMAX PURSUANT TO RULE 12(B)(6) BECAUSE THE CLAIM ATTEMPTS TO RECOVER DAMANGES BEYOND THE STATUTE OF LIMITATIONS**

The Copyright Act limits Plaintiff's damages to three years prior to the commencement of the action. Thus, Plaintiff can only recover alleged damages for copyright infringement that occurred after November 10, 2017. Any request for additional damages should be stricken. (*See* Prayer ¶ 2.)

"The Supreme Court was crystal clear ... that, independent of whether the injury or discovery rule applies, '[u]nder the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence,' and that 'the infringer is insulated from liability for earlier infringements of the same work.' " *Sohm v. Scholastic Inc.*, 959 F.3d 39, 51 (2d Cir. 2020) (*quoting Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 633, 671 (2014)).

Therefore, for the purposes of alleged damages Plaintiff's argument regarding the discovery rule, accrual of claims, and Miramax's conduct is irrelevant. Courts have concluded that while the discovery rule determines whether a suit is timely "a three-year lookback period from the time a suit is filed ... determine[s] the extent of the relief available." *Werner v. BN Media, LLC*, 2020 WL 4728814, at *3 (E.D.Va. Aug. 7, 2020). Here, that relief is limited to alleged damages occurring from November 10, 2017, three years before the filing of this lawsuit at issue. Moreover, in previous correspondence Plaintiff has not disputed the fact that there is a three-year look back period for copyright infringement. Yet, Plaintiff refuses to modify its Prayer and FAC to indicate the correct amount of alleged damages. Therefore, Miramax asks that the damages portion of the Prayer be stricken and/or amended to limit damages allegations to the time period from November 11, 2017.

## CONCLUSION

For all of the reasons above, Miramax respectfully requests that the Court dismiss

Plaintiff's FAC.

Dated: Los Angeles, California
February 8, 2021

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: _/s/  John M. Gatti_
John M. Gatti (admitted *pro hac vice*)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224
E-Mail:  jgatti@manatt.com

Lauren J. Fried (admitted *pro hac vice*)
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224
E-Mail:  lfried@manatt.com

*Attorneys for Defendants Miramax, LLC,*
*Miramax Film Corp., and Miramax Film*
*NY, LLC*